### DAVIS v. DAVIS.

(Supreme Court, Appellate Division, First Department. June 24, 1904.)

1. SPECIFIC PERFORMANCE—EVIDENCE—SUFFICIENCY.

    In an action to compel defendant to execute and deliver a deed to plain-
tiff for an undivided one-half of certain property, and to account for
rents, evidence examined, and *held* insufficient to sustain a finding that
defendant purchased the property under an agreement that the parties
should own it in common.

    Patterson and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Thomas F. Davis against William Davis, Jr. Judgment
for plaintiff, and defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, INGRAHAM, and LAUGHLIN, JJ.

Louis O. Van Doren, for appellant.
Theron G. Strong, for respondent.

INGRAHAM, J. In July, 1888, the defendant purchased from one
William D. Carroll a piece of land in what was then the town of
Morrisania, now the city of New York, and received a conveyance
thereof. The plaintiff—who is the defendant's brother—and the de-
fendant occupied the premises immediately after its purchase, and
have continued so to occupy them down to the commencement of
this action. In July, 1893, this action was commenced, by which the
plaintiff asked that the defendant be required to execute and deliver
to the plaintiff a deed for an undivided one-half of the premises, and
to account to the plaintiff for the rents received during the time that

he has been the owner thereof. The complaint alleges an agreement that the plaintiff and defendant would purchase the property; that each would furnish one-half of the purchase price, to wit, $2,000 each; that the defendant agreed to advance a part of the plaintiff's share of the purchase price, and to accept in installments from the plaintiff so much thereof as he was able to pay down, until the whole thereof should be paid, and that both should occupy the premises in common, and jointly keep and maintain the same, and collect the rents, issues, and profits thereof, and to pay thereupon the taxes, repairs, and cost of maintenance; that it was further agreed that the deed to the premises should be taken in the name of the plaintiff and the defendant together, but that the defendant, contrary to said agreement, and in the absence of the plaintiff, and without his knowledge or consent, caused the said deed to be made out to him individually, and that on or about the 30th day of August, 1888, the premises were conveyed to the defendant; that the plaintiff has paid to the defendant the sum of $2,100, being more than his share of the purchase price of said premises. These allegations are denied by the defendant.

The case was tried at Special Term, where the court found the agreement as alleged by the complaint, and directed a judgment requiring the defendant to convey to the plaintiff an undivided half of the premises, and appointing a referee, before whom the· defendant was required to account; and from that judgment the defendant appeals.

I think the evidence is insufficient to justify a finding that there was any agreement under which these premises were bought by the plaintiff and the defendant in common. The plaintiff testified that in the summer of 1888 a Mr. Carroll asked the plaintiff if he wanted to buy this property; that the plaintiff spoke to the defendant about it, and he and his brother went to see Carroll and to look at the property; that the last time they went to see the property the defendant asked the plaintiff how much money he had, to which the plaintiff replied:

"I told him I had $200 or $300 I could let him have. So I did not bother with it any more about that. * * * He asked me how much money I had. I told him between two and three hundred dollars. So I did not bother with it after that until 1889. * * * I gave the two hundred dollars or three hundred dollars that I speak of right after the second visit to the premises. He did not give me any receipt at that time. I gave him other money after that in a lump."

The witness further testified that from time to time he gave to the defendant other sums of money in various amounts, up to 1894, making in all about $1,000; that subsequently they determined to make alterations in the building; that after these alterations were made the brothers occupied the building, the defendant occupying the first floor, and the plaintiff the second floor; that they erected another building upon the rear of the lot in December, 1896; that the plaintiff never paid the defendant any rent; that his wife sometimes collected the rent and gave it to the defendant; that the portion of the property not occupied by the parties to the suit was rented to others for from $70 to $75 a month. Upon cross-examination the plaintiff testified that prior to the purchase of the property he and his

brother had always lived together; that at the time of the purchase the plaintiff was employed by Carroll, who conveyed the premises to the defendant; that the plaintiff could not remember what talks he had with his brother, or what was said about it; that:

"All that was said on the third occasion was, he asked me how much money I had. I told him I had two hundred or three hundred dollars. That is all that was said about the purchasing of that property on the third occasion which I have just mentioned. * * * That was all the conversation I had in 1888 with my brother about the purchasing of that property. That was the last conversation I had with him in 1888."

The defendant, in his own behalf, testified that he bought the property from Carroll, and paid for it, and received the deed from Carroll, paying $2,000 in cash, and executing a mortgage for $2,000 upon the property—drawing the money paid from savings bank, the books of which he produced upon the trial; that the plaintiff did not give the defendant any money prior to the purchase of the property; and that the defendant paid all the taxes, insurance, and the interest upon the mortgage. In regard to the money furnished by the plaintiff, the defendant testified that in September, after the purchase of the house, the plaintiff told him that he had some money which he would loan to the defendant to help him pay off the mortgage; that the plaintiff gave the defendant $300 on the 18th of September, 1888, for that purpose; that he paid off $1,000 on account of the mortgage on the 18th of September, the day that the plaintiff loaned him the $300; that the total amount that the plaintiff had loaned the defendant was $1,100, for which he gave the plaintiff a receipt, which was produced by plaintiff and introduced in evidence. That receipt was dated Monday, November 18, 1889, and was as follows: "Received from Thomas Davis Eleven Hundred dollars ($1,100.00) on acct. House & lot, No. 653 East 152nd St., N. Y. Wm. Davis, Jr."

Upon rebuttal the plaintiff was recalled, and he was again asked what took place at the time he and the defendant talked about buying the property, and he replied:

"I can't remember this particular conversation. He spoke about it in general, and I told him it would enhance or increase in value in time. And he asked me how much money I had. I told him I had so much—two hundred dollars or three hundred dollars."

He was then asked:

"I am asking you to direct your attention to one particular point. What was said between you and your brother as to you two buying the property jointly and together?" To which he replied: "We would buy this property together."

The evidence is substantially undisputed that the defendant purchased the property in August, 1888; that the plaintiff furnished no part of the money paid for the property; that $2,000 was paid in cash, which was taken by the defendant from the bank in which he had the money deposited; that from that time down to the present he has received all the rentals that have been paid for the property, paid all taxes and assessments upon the property, and paid the insurance and the interest on the mortgages on the property, and that at no time did the plaintiff ever demand or receive any of the rents of the property, exercise any act of ownership over it, or make any

demand in relation to the property, until 14 years after it was purchased. The plaintiff's testimony as to any agreement is so indefinite that, standing uncontradicted, it would not justify a finding that such an agreement was ever made. As no part of the consideration with which the property was purchased was furnished by the plaintiff, there can be no resulting trust, and the plaintiff, to recover, relies solely upon a verbal agreement made when the property was purchased; but even this agreement is unproved, and the acts of both parties from the time when this conveyance was made to the commencement of the action are entirely inconsistent with the fact that the plaintiff considered that he had any interest in it. I have serious doubts as to whether this contract, if one were proved, could be enforced. No writing was produced by which the plaintiff was to have an interest in this property. No resulting trust was established, for the plaintiff furnished no portion of the consideration. The property was purchased and paid for by the defendant, and by the statute of frauds a writing is required to establish an interest in real property.

It follows that the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur. PATTERSON and LAUGHLIN, JJ., dissent.